

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Roberto Pérez Rivera, Lissette María Rivera Guzmán y la Sociedad de Bienes Gananciales compuesta por ambos<br><br>Peticionarios<br><br>v.<br><br>Registradora de la Propiedad de San Juan, Sección Segunda, Hon. Carmen E. Ávila Vargas<br><br>Recurrida | 2013 TSPR 122<br><br>189 DPR \_\_\_\_ |

Número del Caso: RG-2013-6

Fecha: 30 de octubre de 2013

Abogado de la Parte Peticionaria:

        Lcdo. Juan H. Soto Sola

Abogado de la Parte Recurrida:

        Hon. Carmen E. Ávila Vargas,
        Registradora de la Propiedad

Materia: Derecho Inmobiliario – Facultades limitadas del Registrador de la Propiedad

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Roberto Pérez Rivera, Lissette María Rivera Guzmán y la Sociedad de Bienes Gananciales Compuesta por Ambos<br><br>Peticionarios<br><br>v.<br><br>Registradora de la Propiedad de San Juan, Sección Segunda, Hon. Carmen E. Ávila Vargas<br><br>Recurrida | **Núm. RG-2013-0006** | *Recurso Gubernativo* |

Opinión del Tribunal emitida por el Juez Asociado señor FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 30 de octubre de 2013.

**I**

Hoy reafirmamos una característica fundamental de nuestro ordenamiento registral inmobiliario: la facultad limitada de un Registrador de la Propiedad al momento de calificar. Específicamente, resolvemos que un registrador no puede revisar la razonabilidad y la validez de unas condiciones restrictivas inscritas previamente en el Registro de la Propiedad. Veamos.

**II**

El 18 de julio de 2008 los esposos Roberto Pérez Rivera y Lissette María Rivera Guzmán (los peticionarios)

otorgaron una escritura titulada "Escritura Matriz sobre Conversión al Régimen de Propiedad Horizontal del Condominio Padín 170". Mediante esta escritura, los peticionarios pretendían someter al régimen de propiedad horizontal la finca número 1,564 (finca #1,564).[1] Dicho solar forma parte de la Urbanización Huyke en San Juan.

La mencionada escritura fue presentada el 22 de diciembre de 2009 ante la Sección II del Registro de la Propiedad de San Juan. El 6 de diciembre de 2012 la Registradora de la Propiedad, Hon. Carmen E. Ávila Vargas (la Registradora), notificó una serie de faltas que impedían que se constituyera el régimen de propiedad horizontal. En lo aquí pertinente, señaló que la finca #1,564 está sujeta a ciertas condiciones restrictivas que requieren que toda edificación que allí se construya sea para albergar no más de dos (2) familias, entendiéndose que la edificación debe ser de dos (2) plantas, cada una habitada por una (1) familia distinta.[2] La Registradora

---

[1]    La finca número 1,564 está inscrita al folio 32 del tomo 197 de Río Piedras Norte. Fue segregada originalmente de la finca número 27, inscrita al folio 119 del tomo 146 de Río Piedras Norte y está compuesta por el solar número 32 de la manzana "B" de la Urbanización Huyke.

[2]    La Registradora también notó la presencia de otras faltas que deben ser atendidas luego de que sea subsanado el primer impedimento señalado, específicamente, la ausencia de varios documentos requeridos para inscribir una escritura pública sobre propiedad horizontal en el Registro de la Propiedad. Véase Artículo 22 de la Ley Núm. 104 de 25 junio de 1958, según enmendada, conocida como "Ley de la Propiedad Horizontal", 31 L.P.R.A. sec. 1292 (1993 y Supl. 2012). Debido a que en esta ocasión sólo nos pronunciaremos sobre el efecto de las condiciones restrictivas según aludido en los señalamientos consignados por la Registradora, no discutiremos las faltas adicionales.

concluyó que tales condiciones restrictivas creaban un impedimento para la constitución del régimen de propiedad horizontal toda vez que, según la escritura sujeta a calificación, el inmueble en controversia está compuesto por tres (3) apartamentos residenciales, dos (2) de los cuales se encuentran en la segunda planta.

En desacuerdo, el 26 de diciembre de 2012 los peticionarios presentaron un Escrito de Recalificación. La Registradora, el 26 de abril de 2013, denegó nuevamente la inscripción utilizando como justificación las mismas faltas notificadas inicialmente, extendiendo en su lugar una anotación preventiva de denegatoria. Inconforme, el 14 de mayo de 2013 los peticionarios presentaron ante nos el presente recurso gubernativo.

En esencia, los peticionarios alegaron que las condiciones restrictivas sobre la finca #1,564 se relacionan al uso del terreno como uno residencial, y no a la intensidad de dicho uso. Por lo tanto, debido a que cada uno de los tres (3) apartamentos del inmueble se ha destinado para uso estrictamente residencial, los peticionarios razonaron que no se ha variado la naturaleza del uso permitido por las condiciones restrictivas, ni el propósito del urbanizador. Sostuvieron, además, que la interpretación de las condiciones restrictivas que realizó la Registradora limitaba injustificadamente su derecho propietario. Señalaron que el aumento poblacional en la

zona urbana de San Juan no justifica la permanencia de amplias residencias familiares en el centro de dicho municipio. Por consiguiente, aducen que lo que proponen no es una desviación de las condiciones restrictivas establecidas hace siete (7) décadas, sino una atemperación a las necesidades de desarrollo actuales.

Por otro lado, los peticionarios sostuvieron que el proceso de calificación no se llevó a cabo de acuerdo al procedimiento señalado en la Ley Núm. 198 de 8 de agosto de 1979, según enmendada, conocida como "Ley Hipotecaria y del Registro de la Propiedad", 30 L.P.R.A. sec. 2001 *et seq.* (2005 y Supl. 2012) (Ley Hipotecaria). Específicamente, aducen que la Registradora no cumplió con el Artículo 71 de esa ley, 30 L.P.R.A. sec. 2274 (2005) (Artículo 71 de la Ley Hipotecaria), el cual establece un término de treinta (30) días para extender una anotación preventiva de denegatoria si, luego de recibida la solicitud de recalificación, el registrador decidiera mantener su calificación original. En el caso de autos, los peticionarios señalan que la anotación preventiva se extendió unos cinco (5) meses luego de presentada su solicitud de recalificación.

La Registradora sometió su alegato ante nos el 31 de mayo de 2013. Contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

### III

La calificación registral es la piedra angular del principio de legalidad. <u>Distribuidores Unidos de Gas de Puerto Rico, Inc. v. Marisol Marchand Castro Registradora de la Propiedad Sección Primera de San Juan</u>, 2013 T.S.P.R. 43, 188 D.P.R. ___ (2013). Como parte de este principio fundamental de nuestro ordenamiento registral, los registradores de la propiedad tienen la obligación de verificar que todo documento presentado ante el Registro de la Propiedad sea válido y perfecto. <u>Íd.</u>; <u>R & G Premier Bank P.R. v. Registradora</u>, 158 D.P.R. 241 (2002). De esta manera, se permite que sólo tengan acceso al Registro los títulos que cumplan con las exigencias legales aplicables. <u>Rigores v. Registrador</u>, 165 D.P.R. 710 (2005).

Para desempeñar esta función calificadora, el Artículo 64 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2267 (2005) (Artículo 64 de la Ley Hipotecaria), dispone que los registradores únicamente podrán revisar los documentos que se presenten ante el Registro, los asientos registrales vigentes y las leyes. <u>Bechara Fagundo v. Registradora</u>, 183 D.P.R. 610 (2011). Dicho de otra manera, el registrador no puede fundamentar su determinación en lo que no conste en los títulos presentados y en el contenido del Registro. <u>Pino Development Corp. v. Registrador</u>, 133 D.P.R. 373 (1993); L.R. Rivera Rivera, <u>Derecho Registral Inmobiliario</u>

Puertorriqueño, 3ra ed., San Juan, Jurídica Eds., 2012, pág. 279. Además, le está prohibido descansar en suposiciones o interpretaciones al evaluar los documentos presentados ante el Registro. Bechara Fagundo v. Registradora, *supra*; Cabassa v. Registrador, 116 D.P.R. 861 (1986).

El Artículo 64 de la Ley Hipotecaria también establece que los registradores carecen de la facultad para evaluar la validez de las calificaciones efectuadas y de los asientos extendidos anteriormente por otros registradores o por ellos mismos. Basándose en el principio de legitimación, dicha disposición decreta que tales asientos extendidos, así como los actos inscritos, gozan de una presunción de validez y deben ser respetados por el registrador hasta tanto los tribunales declaren su nulidad. Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538 (1991); Rivera Rivera, op. cit. Es decir, el registrador tiene una obligación de atenerse al estado de derecho creado por las inscripciones anteriores. Cabassa v. Registrador, *supra*. El que alegue la nulidad de un acto o contrato inscrito en el Registro tiene que acudir ante un foro judicial para que éste determine su validez, ya que el estado de derecho creado por las inscripciones anteriores sólo puede ser alterado por una orden judicial. San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640 (2008).

Hemos resuelto, además, que en nuestro sistema registral inmobiliario los registradores no están facultados para realizar tareas propias de jueces, Cabassa v. Registrador, *supra*, ni para declarar la existencia de un derecho dudoso entre partes. Gasolinas PR v. Registrador, 155 D.P.R. 652 (2001). En fin, las funciones de los registradores están limitadas únicamente a determinar si un documento es o no inscribible. Íd. Lo anterior se desprende claramente del Artículo 67 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2270 (2005), el cual dispone que "[l]a calificación hecha por el registrador de los documentos presentados será a los únicos efectos de extender o denegar la inscripción, anotación, nota o cancelación solicitada…".

Como mencionamos anteriormente, la Ley Hipotecaria especifica que al momento de calificar los registradores pueden utilizar el propio Registro. Así pues, el registrador debe acudir a los asientos vigentes para realizar una comprobación de datos, tales como la identidad de la finca y la búsqueda de cargas y gravámenes. Rigores v. Registrador, *supra*. Esto tiene el propósito de identificar aquellas faltas que surgen del Registro y que impiden la registración del título presentado.[3] Rivera Rivera, op. cit., pág. 280. Una de las faltas que surge del propio Registro, y por la cual el

---

[3]   El Artículo 68 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2271 (2005), establece específicamente que serán faltas que impiden la registración del título presentado "[l]as que se originen de obstáculos del Registro…."

registrador está autorizado a denegar la inscripción de un título, es "la existencia de condiciones restrictivas que impiden el acto o contrato que se pretende inscribir". Rigores v. Registrador, *supra*, pág. 728 (cita omitida).

Las condiciones restrictivas se constituyen unilateralmente por el urbanizador como parte de las servidumbres en equidad y sirven para limitar las facultades de los futuros adquirentes con respecto al uso destinado y las edificaciones permisibles dentro de la finca gravada. Rodríguez *et al*. v. Gómez *et al*., 156 D.P.R. 307 (2002). Para asegurar su validez y eficacia, las servidumbres en equidad tienen que establecerse como parte de un plan general de mejoras, constar de forma específica en el título de la propiedad y ser inscritas en el Registro. Residentes Parkville v. Díaz, 159 D.P.R. 374 (2003). Una vez se cumple con estos requisitos, las servidumbres forman derechos reales oponibles *erga omnes*. Rodríguez *et al*. v. Gómez *et al*., *supra*.

El Registro es público para quienes tengan interés en conocer sobre el estado jurídico de los inmuebles y derechos reales inscritos. Por lo tanto, el mismo sirve como el notificador por excelencia a terceras personas sobre la existencia de condiciones restrictivas. Asoc. Vec. Urb. Huyke v. Bco. Santander, 157 D.P.R. 521 (2002). Dado el principio de publicidad registral, se considera que el Registro le "otorga pleno conocimiento al que

adquiere un terreno que está sujeto a la servidumbre en equidad o restricción". Íd. pág. 536 (nota al calce omitida). Tales adquirientes tienen el deber de cumplir con las condiciones restrictivas impuestas por la servidumbre, por lo que no es permitida cualquier conducta o actuación prohibida por éstas. Íd.; Rodríguez *et al*. v. Gómez *et al*., *supra*.

Si un titular entiende que las condiciones restrictivas a las cuales está sujeto su solar deben ser modificadas, o que ya las mismas están extintas, debe solicitar una sentencia declaratoria ante un tribunal. Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346 (1986). Véase también Sabater v. Corp. Des. Eco. del Pastillo, Inc., 140 D.P.R. 497 (1996) (Sentencia). Específicamente, hemos señalado que el recurso de sentencia declaratoria sirve para obviar la inseguridad y los peligros que surgen por el desconocimiento de la vigencia de las servidumbres. Asoc. V. Villa Caparra v. Iglesia Católica, *supra*. Resolvimos en aquel entonces que de existir controversias entre una construcción propuesta y las restricciones a las cuales está sujeto un solar, es responsabilidad del propietario utilizar la sentencia declaratoria antes de proceder con cualquier obra. De no acudir al tribunal, los propietarios asumen los riesgos de cualquier actuación en contravención de las condiciones restrictivas, así como de los daños producto de sus

acciones.  Íd.  Véase Asoc. Vec. Urb. Huyke v. Bco. Santander, *supra*.

**IV**

En su alegato ante nos, la Registradora sostiene que debemos confirmar su calificación inicial, ya que existen condiciones restrictivas a las cuales está sujeta la propiedad de los peticionarios que impiden el acto que se pretende inscribir.  Argumenta, además, que queda al margen de su competencia como registradora determinar la razonabilidad de las condiciones restrictivas.  Esto, según ella, le compete únicamente a los tribunales.  Le asiste la razón.

En primer lugar, es importante notar que en el caso de autos no hay controversia sobre el hecho de que la finca #1,564 está sujeta a una servidumbre en equidad válidamente inscrita en el Registro.  Tampoco está en controversia que en la segunda planta del inmueble que se pretende someter al régimen de propiedad horizontal se construyeron dos (2) apartamentos para albergar dos (2) familias distintas, algo que está claramente prohibido por las condiciones restrictivas que afectan la mencionada finca.[4]  Por constar inscritas, dichas limitaciones gozan

---

[4] La servidumbre, según consta en la Escritura Número 65 otorgada el 9 de septiembre de 1946 y debidamente inscrita en el Registro, en lo pertinente dispone:

> 1. La edificación que se levante en cada uno de los solares será dedicada única y exclusivamente para fines de residencia y no más de dos familias, entendiéndose que cuando una edificación se construya para albergar dos familias, ésta será de dos plantas cada una de las cuales albergará una familia distinta.
>
> ....

del principio de publicidad registral, por lo que se otorga pleno conocimiento de las mismas a los peticionarios. Véase Asoc. Vec. Urb. Huyke v. Bco. Santander, *supra*. Consecuentemente, ellos tenían el deber de respetarlas. Al denegar la calificación solicitada, la Registradora se percató oportunamente de que los peticionarios incumplieron con tales restricciones.

La Registradora tiene la potestad y el deber de auscultar en el Registro si existen obstáculos que impiden que se someta el inmueble al régimen de propiedad horizontal. No hay duda de que la existencia de las restricciones que prohíben que haya más de un apartamento por piso es una de las razones por la cual la Registradora podía válidamente denegar la inscripción del título. Véase Rigores v. Registrador, *supra*. Contrario a lo argumentado por los peticionarios, el hecho de que los apartamentos en controversia continuasen teniendo un uso residencial no significa que no se estén violando las condiciones restrictivas impuestas por la servidumbre de equidad.

En su Escrito de Recalificación, así como en su recurso gubernativo ante nos, los peticionarios arguyen que la Registradora erró al denegar la inscripción, toda vez que el aumento poblacional en San Juan no justifica la permanencia de residencias amplias en dicho municipio y las restricciones aludidas vulneran su derecho

propietario. No obstante, como bien indica la Registradora, al momento de calificar los registradores sólo pueden tomar en consideración los documentos presentados ante el Registro y los asientos extendidos previamente. Véase Artículo 64 de la Ley Hipotecaria; Bechara Fagundo v. Registradora, *supra*. Los argumentos que proponen los peticionarios están sujetos a la evaluación de factores extra registrales, los cuales no constaban en los documentos presentados ante el Registro. Por esta razón, la Registradora acertadamente rechazó adentrarse en los argumentos interpuestos por los peticionarios.

Asimismo, y más fundamental aún, la Registradora carecía de la competencia para pasar juicio sobre la razonabilidad de las condiciones restrictivas. En primer lugar, no estaba facultada para evaluar su validez, ya que las mismas fueron inscritas anteriormente por otro registrador. Por consiguiente, la Registradora tenía el deber de atenerse al estado de derecho creado por las condiciones restrictivas, las cuales se presumen válidas. Véase Artículo 64 de la Ley Hipotecaria; Cabassa v. Registrador, *supra*.

Además, los registradores gozan únicamente de la facultad para extender o denegar la inscripción solicitada, no para determinar si las condiciones restrictivas debían ser modificadas o extinguidas. Lo

último es una controversia puramente extra registral, la cual queda fuera de su competencia. Acorde con lo anterior, la Registradora ejerció sus facultades calificativas correctamente al respetar las restricciones impuestas por la servidumbre en equidad y denegar la inscripción solicitada.

Por otro lado, en situaciones como la de autos, donde las partes solicitan que se le reconozcan derechos que no constan en el Registro, los registradores no pueden servir como jueces. Véase Cabassa v. Registrador, *supra*. Es ampliamente conocido que el único facultado para adjudicar derechos dudosos es el tribunal. Consecuentemente, si los peticionarios entendían que las condiciones restrictivas debían ser modificadas o extinguidas debido a cambios en el vecindario, o que las mismas ya no eran razonables, les correspondía haber empleado el recurso de sentencia declaratoria. Véase Asoc. V. Villa Caparra v. Iglesia Católica, *supra*. Tal procedimiento les hubiese permitido esclarecer cuáles eran las limitaciones existentes y si éstas continuaban vigentes a pesar de los cambios que, según ellos, podían ocasionar su modificación o extinción. Al obviar este mecanismo, los peticionarios escogieron el vehículo procesal inadecuado.

Finalmente, debemos señalar que los peticionarios tienen la razón al sostener que el proceso de recalificación no se llevó a cabo de acuerdo con el

procedimiento señalado en el Artículo 71 de la Ley Hipotecaria debido a que la Registradora, luego de recibida la solicitud de recalificación, se tardó más de cinco (5) meses en extender la anotación preventiva de denegatoria. Sin embargo, esta demora no produjo efecto alguno en el documento presentado para calificación. Anteriormente hemos expresado que el término de treinta (30) días establecido por el Artículo 71 de la Ley Hipotecaria es de carácter directivo, no fatal. Senior Las Marías Corp. v. Registrador, 113 D.P.R. 675, 683 n.5 (1982). Ahora bien, aunque este término es sólo directivo, los registradores todavía tienen una obligación de hacer un esfuerzo para cumplir con el mismo. El Artículo 66.3 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, según enmendado, Reglamento Núm. 2674, Departamento de Estado, 9 de julio de 1980, establece un procedimiento de queja ante el registrador en cuestión y, en caso de ser necesario, ante el Director Administrativo del Registro de la Propiedad. De modo que, si los peticionarios entendían no existía una causa justificada para la demora, pudieron haber presentado su reclamo directamente ante la Registradora.

Por todo lo anterior, resolvemos que la Registradora actuó correctamente al denegar la inscripción solicitada ya que, debido a sus facultades limitadas al momento de

calificar, estaba vedada de revisar la razonabilidad y la vigencia de unas condiciones restrictivas inscritas en el Registro como parte de una servidumbre en equidad. Esta determinación le compete únicamente a los tribunales mediante un recurso de sentencia declaratoria.

**V**

Por los fundamentos expuestos anteriormente, procedemos a confirmar la recalificación recurrida.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Roberto Pérez Rivera, Lissette María Rivera Guzmán y la Sociedad de Bienes Gananciales Compuesta por Ambos<br><br>Peticionarios<br><br>v.<br><br>Registradora de la Propiedad de San Juan, Sección Segunda, Hon. Carmen E. Ávila Vargas<br><br>Recurrida | Núm. **RG-2013-0006** | *Recurso Gubernativo* |

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2013

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, procedemos a confirmar la recalificación recurrida.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo